IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| TRACBEAM, L.L.C., | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CASE NO. 6:13-CV-93 |
| GOOGLE, INC., | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions filed by Defendant Google, Inc. ("Google") or Plaintiff TracBeam, L.L.C., ("TracBeam"):

- Google's Motion to Strike Dr. Rose's Report (Docket No. 91);

- Parties' Cross-Motion for Summary Judgment of Prosecution Laches (Docket No. 152);

- Google's Motion for Summary Judgment of Non-Infringement (Docket No. 153);

- TracBeam's Motion to Exclude Certain Opinions of Ms. Stamm (Docket No. 154);

- Google's Motion to Exclude the Opinions of Dr. Rose (Docket No. 155);

- Parties' Cross-Motion for Summary Judgment of Invalidity (Docket No. 156);

- Google's Motion to Exclude the Testimony of Mr. Mills (Docket No. 157); and

- TracBeam's Motion for Leave to File a Supplemental Complaint (Docket No. 185).

The Court heard oral arguments regarding these motions on May 2, 2014. Having considered the parties' written submissions and oral argument, the Court **DENIES** Google's Motion to Strike Dr. Rose's Report (Docket No. 91) and **DENIES** the Parties' Cross-Motion for

Summary Judgment of Prosecution Laches (Docket No. 152). The Court will issue orders regarding Google's Motion to Exclude the Opinions of Dr. Rose (Docket No. 155) and the Parties' Cross-Motion for Summary Judgment of Invalidity (Docket No. 156) shortly.

Additionally, for the reasons stated below, the Court **DENIES** Google's Motion for Summary Judgment of Non-Infringement (Docket No. 153); **GRANTS-IN-PART** and **DENIES-IN-PART** TracBeam's Motion to Exclude Certain Opinions of Ms. Stamm (Docket No. 154); **GRANTS-IN-PART** and **DENIES-IN-PART** Google's Motion to Exclude the Testimony of Mr. Mills (Docket No. 157); and **GRANTS** TracBeam's Motion for Leave to File a Supplemental Complaint (Docket No. 185).

## BACKGROUND

TracBeam filed its amended complaint alleging patent infringement against Google on May 19, 2011. Docket No. 57. TracBeam currently asserts claims 1 and 7 of U.S. Patent No. 7,764,231 ("the '231 Patent") reads on the Google Location Platform ("GLP"), including the GLP's components, the Google Location Server ("GLS") and the Network Location Provider ("NLP"). The technology involves a method of estimating the location of a mobile device using two or more location determining techniques. Several of the motions before the Court concern the following language in claim 1: "<u>first and second</u> mobile station location estimation <u>determiners</u> [that] provide different geographical indications . . . when said location estimation determiners are supplied with <u>corresponding input data</u> obtained using wireless signal measurements." '231 Patent 171:6–16 (emphasis added). TracBeam identifies the GLS as the "first determiner" and the NLP, or a Fused Location Provider that contains an NLP, as the "second determiner." Docket No. 153 at 13. TracBeam further identifies Wi-Fi access point

signal strength measurements or cell tower signal strength measurements as the "corresponding input data."[1] *Id.*

## GOOGLE'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

Google first argues that it cannot be liable for undivided direct infringement because it does not control or direct the third parties who, according to Google, perform the "receiving" and "outputting" steps in the claims. Docket No. 153 at 7. Google contends hardware manufacturers and end users perform these steps. *Id.* at 7–8. According to Google, it only provides the software that is run on the third-party hardware. Further, Google claims its software can be modified by end users if they "disable cellular and/or Wi-Fi components of the device, disable 'Google location services,' and prevent any or all applications from having access to Device Location." *Id.* at 9.

Contrary to Google's assertions, the claims allow for a single software provider to perform every claimed step. The claims have "receiving" and "outputting" steps, however, they do not recite any steps for enabling or initiating. Thus, it is irrelevant that an end user can disable Wi-Fi (or GPS) or open up an application that uses the GLP, just as it is irrelevant that an end user must first buy the mobile device, have a network connection, or turn the mobile device on. *See SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1331 (Fed. Cir. 2010) ("There exists no method step in any of the disputed claims that requires 'enabling' or 'activating' the devices that perform these claim limitations . . . . Appellants, in essence, ask us to read such limitations into the claims. We decline to do so."). Google created the software code that allegedly performs the steps in the claimed method. Some of this software exists on Google servers and some resides on the NLP, which is on the mobile device. Though the mobile device is manufactured by

---

[1] The parties alternatively refer to this element as "input data," "data obtained using wireless signal measurements," and "signal strength measurements." Throughout this Order, the Court will refer to this element as input data.

hardware manufacturers and owned by end users, Google does not dispute it contractually prohibits third parties from modifying the NLP software. Docket No. 173 at 12. Once an application calls for a mobile device location, the software automatically executes without action or input from third parties. Therefore, only Google's actions are involved in the "outputting" and "receiving" steps. *See SiRF*, 601 F.3d 1319 at 1331.

Google's arguments to the contrary are insufficient. Google contends that the holding in *SiRF* should be limited to hardware manufacturers who make both the hardware and software necessary to perform the infringing steps. Docket No. 189 at 2. Google argues that unlike the defendant in *SiRF*, who manufactured both the hardware and software, Google only creates the software. *Id.* Google fails to show why this distinction is relevant. Google designed the software to be used automatically by the hardware, without input from manufacturers, who have contractually agreed not to modify the software. Google provides no reason why the fact that another company manufactured the hardware should be dispositive in this scenario. Accordingly, the Court rejects Google's argument that it cannot be liable for direct infringement.[2]

Aside from the issue of divided infringement, Google argues it does not infringe because, according to Google, not every claimed element is found in the GLP. Google asserts the claims' first and second determiners must <u>both</u> be supplied with input data. Docket No. 153 at 12 (emphasis by Google). As explained in the Court's *Markman* Order, Google's argument fails because the determiners need not always provide geographical indications, thus the determiners

---

[2] Additionally, even if these steps could be attributed to third parties, Google does not explain why its relationships with hardware manufacturers, who are technologically and contractually unable to modify the software used by the GLP, do not meet the direction or control standard. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012) (direction or control is met by "an agency relationship between the actors or *some equivalent*") (emphasis added), *cert. granted*, 134 S. Ct. 895 (Jan. 10, 2014) (No. 12-786).

need not always be supplied with input data. *TracBeam L.L.C. v. AT&T, INC., et al.*, 6:11-cv-096, Docket No. 352 at 30 (E.D. Tex. Jan. 23, 2013) ("*Markman* Order") ("[G]eographical indications are not required to be available."). Further, Google provides no support in the claim language for its contention that "each" of the determiners must always be supplied with input data. Docket No. 153 at 13. Therefore, the fact that the GLS and NLP are never both supplied with input data, even if true, does not support Google's request for a finding of non-infringement.

Google further argues that it cannot infringe because "geographical indications are only available when location estimation determiners are supplied with input data." Docket No. 189 at 7 (quoting *Markman* Order at 30). Google claims the GLS provides geographical indications even in instances when it is not supplied with input data. *Id.* Thus, according to Google, the accused process does not infringe. *Id.* Google's quote from the *Markman* Order contains potentially misleading language when read out of context. The *Markman* Order explains the claims require that whenever a determiner is supplied with input data, then that determiner must provide geographical indication. *Markman* Order at 28–30. That is, geographical indications are only *required* when the determiners are supplied with input data. *Id.* at 29. The Court was not considering the question of whether the determiners can provide geographical indication in the absence of input data. Google's interpretation of the *Markman* Order—that the only instance the geographical indications can be available is when the determiners are supplied with the input data—has no basis in the claim language. Therefore, the Court rejects both of Google's non-infringement arguments and **DENIES** Google's Motion for Summary Judgment of Non-Infringement (Docket No. 153).

**TRACBEAM'S MOTION TO EXCLUDE CERTAIN OPINIONS OF MS. STAMM**

TracBeam argues Ms. Stamm, Google's damages expert, improperly relies on six license agreements. Docket No. 154 at 4. According to TracBeam, these licenses fail to indicate the extent to which Google uses the underlying technology. The Court rejects TracBeam's argument on this point because even without evidence regarding extent of use, licenses may still be probative of the value placed on patented technology in hypothetical negotiations. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009) (observing that "companies in the high-tech computer industry" often have "strong reasons not to tie the royalty amount strictly to usage"). TracBeam also argues Ms. Stamm cannot rely on the Carl Meyer Agreement because it does not cover comparable technology. Docket No. 183 at 4. The only technical details relating to the Carl Meyer Agreement, which on its face covers different technology, come from Ms. Stamm, who is not qualified under FED. R. EVID. 702 to opine as a technical expert. Accordingly, TracBeam's Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**. Apart from the Carl Meyer Agreement, Ms. Stamm may rely on these licenses.

**GOOGLE'S MOTION TO EXCLUDE THE TESTIMONY OF MR. MILLS**

Google requests the Court to strike the report of Mr. Mills, TracBeam's damages expert. Google contends Mr. Mills improperly relies on revenue sharing agreements, provides no basis for his 50/50 split in profits, improperly asks for a running royalty rate, and grossly inflates the royalty base. Docket No. 157 at 1–4. Aside from the revenue sharing agreements, Google fails to show why its criticisms rise to the level of a *Daubert* challenge instead of cross-examination.[3] The revenue sharing agreements are contracts for "app" developers to list their software on the Google Play Store or agreements for splitting advertising revenue with third-party advertisers.

---

[3] Mr. Mills relies on Dr. Rose's report, which is the subject of a separately pending *Daubert* challenge. To the extent anything is stricken in that report, Mr. Mills' testimony will be limited accordingly.

TracBeam argues these agreements are relevant to show "how Google splits the benefit of the invention with partners." Docket No. 192 at 3. What Google shares with Rovio for Angry Bird downloads or for advertisements on partner websites has no bearing at all on predicting how much of the incremental profits Google would share with TracBeam for a bare, non-exclusive license covering part of a location platform that Google develops itself. Accordingly, Google's Motion to Exclude the Testimony of Mr. Mills is **GRANTED-IN-PART** and **DENIED-IN-PART**. Mr. Mills may not rely on the revenue sharing agreements.[4]

### TRACBEAM'S MOTION TO FILE A SUPPLEMENTAL COMPLAINT

TracBeam filed its Motion to File a Supplemental Complaint (Docket No. 185) in response to the Court's Order Denying Google's Motion to Dismiss (Docket No. 180). Google filed its Motion to Dismiss because the only product TracBeam accuses in its experts' reports, the GLP, has a software feature that was added after the date TracBeam filed its amended complaint against Google. TracBeam admits this software feature, the "aperture" computation, is necessary for its infringement theory. Docket No. 132 at 2. Thus, Google argued the Court does not have subject matter jurisdiction because TracBeam is suing on infringing activity that occurred after TracBeam filed its amended complaint. TracBeam countered that the amended complaint gives the Court subject matter jurisdiction over the aperture version of the GLP because the Court has subject matter jurisdiction over the other products it accused in the amended complaint, even though it is no longer pursuing those products in this litigation. The Court rejected both arguments, finding the jurisdiction in the amended complaint was limited to

---

[4] The Court notes it has already struck Mr. Mills' reliance on equally irrelevant revenue sharing agreements in his report concerning Defendant AT&T. *TracBeam, L.L.C. v. AT&T et al.*, No. 6:11-cv-96, Docket No. 551 at 10 (E.D. Tex. Nov. 25, 2013). TracBeam responded to that ruling, not by removing the instant agreements from Mr. Mills' report concerning Google, but by discussing the agreements with Ms. Stamm during her Feb. 19, 2014 deposition. TracBeam attempted to bolster its arguments that the agreements—which are not even patent licenses—should nevertheless go before the jury by seeking a concession from Ms. Stamm that the agreements are relevant. *See* Docket 171, Ex. C (Deposition of Ms. Stamm) at 259:9—261:15. In light of the *AT&T* Order, one would expect TracBeam to have simply removed the agreements from Mr. Mills' report.

the products that existed at the time of the complaint, but that TracBeam could nevertheless file a supplemental pleading under Rule 15(d) to add the allegations regarding the aperture feature. Docket No. 180 at 3–4. The Court instructed TracBeam to move for leave to file a supplemental pleading, and invited Google to respond to the motion. *Id.* at 5.

TracBeam filed its Motion to File a Supplemental Complaint, adding allegations covering the aperture feature. Docket No. 185. In Google's opposition, which was filed five days late, Google chose not respond to TracBeam's Motion, but instead re-argued its position in its initial Motion to Dismiss. Docket No. 200 at 1 ("Google opposes TracBeam's Motion for Leave to file a Supplemental Complaint because it does not remedy the lack of subject matter jurisdiction in this case.").

As set out in the Court's Order, the facts of this case support allowing TracBeam to supplement its complaint. Docket No. 180 at 4–5. TracBeam initially accused several products, including Google's Location Platform. While exchanging expert reports, TracBeam learned that the aperture feature was added to the GLP after the amended complaint. Nevertheless, TracBeam continued to focus its case solely on the GLP with aperture functionality. Google's argument that these facts necessarily result in the Court having no jurisdiction over TracBeam's amended complaint is untenable. These facts merely mean the Court does not have jurisdiction over the GLP with aperture—an issue that can be remedied with a supplemental complaint under Rule 15(d). Accordingly, the Court instructed TracBeam to move to supplement its complaint. Because the matter was not briefed and Rule 15(d) requires "a motion . . . on just terms," the Court invited Google to respond to TracBeam's motion with arguments why TracBeam should not be allowed to file post-complaint allegations. Google chose not to do so. Instead, Google responded to the Court's Order. Accordingly, TracBeam's Motion to Supplement is

8

**GRANTED.** TracBeam may rely on its Supplemental Complaint as filed. Docket No. 185-1 (TracBeam's Supplemental Complaint).

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Google's Motion to Strike Dr. Rose's Report (Docket No. 91); **DENIES** the Parties' Cross-Motion for Summary Judgment of Prosecution Laches (Docket No. 152); **DENIES** Google's Motion for Summary Judgment of Non-Infringement (Docket No. 153); **GRANTS-IN-PART** and **DENIES-IN-PART** TracBeam's Motion to Exclude Certain Opinions of Ms. Stamm (Docket No. 154); **GRANTS-IN-PART** and **DENIES-IN-PART** Google's Motion to Exclude the Testimony of Mr. Mills (Docket No. 157); and **GRANTS** TracBeam's Motion for Leave to File a Supplemental Complaint (Docket No. 185).

**So ORDERED and SIGNED this 9th day of May, 2014.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**